UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC STEEL GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMERCIAL METALS COMPANY, et al.,<br><br>    Defendants. | Case No. 23-mc-80078-HSG (KAW)<br><br>**ORDER DENYING NON-PARTY VINTON STEEL'S MOTION TO QUASH; ORDER GRANTING COMMERCIAL METALS CO.'S MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 1, 5 |

On December 7, 2022, non-party Vinton Steel, LLC filed in the United States District Court for the Western District of Texas a motion to quash a subpoena requesting documents served by Defendant Commercial Metals Company ("CMC"). (Dkt. No. 1.) The subpoena was issued in connection with pending antitrust litigation in this District, *Pacific Steel Group v. Commercial Metals Company et al.*, No. 4:20-cv-07683-HSG. *Id.* at 2. On December 19, CMC moved to compel Vinton to respond to specific requests. (Dkt. No. 5.) The parties were ordered to meet and confer but were ultimately unable to resolve their disputes. (Dkt. Nos. 18, 19.) Judge Anne T. Berton transferred the dispute to this District and Judge Haywood S. Gilliam, Jr. referred the matter to the undersigned.

Having reviewed the parties' filings, the Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). The Court DENIES Vinton's motion to quash and GRANTS CMC's motion to compel as modified.

## I. BACKGROUND

Pacific Steel Group ("PSG") filed a complaint against Danieli Corporation, CMC, and related entities, alleging violations of Sections 1 and 2 of the Sherman Act, California antitrust and unfair competition statutes, and California common law. *See Pacific Steel Grp. v. Commercial*

*Metals Co.*, No. 4:20-cv-07683-HSG ("Litigation"). PSG is a fabricator and installer of steel reinforcing bar ("rebar") based in San Diego who desires to enter the rebar manufacturing market. Rebar manufacturing is done in one of three types of steel mills: traditional integrated steel mills, mini mills, and micro mills. Micro mills were first built in 2009 by CMC and Danieli. According to PSG, it can only enter the rebar manufacturing market through building a micro mill rather than a mini mill.

Danieli is the only company to have developed and sold a micro mill. Although PSG and Danieli were negotiating to build a micro mill, those discussions ended when CMC purchased a new micro mill from Danieli because the agreement included an exclusivity provision which barred Danieli from selling another micro mill to anyone other than CMC within a 500-mile radius of Rancho Cucamonga, California for 69 months. According to PSG, this provision effectively barred it from entering the manufacturing market because of the cost to transport rebar.

Vinton is a mini mill in Vinton, Texas, which primarily serves customers in the Southwestern United States and is owned by Kyoei Steel, a Japanese entity. (Dkt. 1 at 1.) CMC served the relevant subpoena requesting documents on Vinton on November 8, 2022. (Dkt. 1, Ex. 2.) Vinton served its objections and responses on December 6, 2022 and filed its motion to quash the same day. (Dkt. 1, Ex. 6). In response, CMC moved to compel Vinton "to comply with CMC's subpoena by conferring regarding and producing documents in response to those Requests (Nos. 4, 6, 7, 8, 9, and 13) for which Vinton 'stands on its objections,' and apprising CMC of its efforts to obtain approval 'from relevant third parties to produce certain responsive documents" (Requests nos. 1, 2, 3, and 10)." (Dkt. 5 at 3.) CMC seeks to compel Vinton to provide documents responding to the following requests:

> 4. Documents sufficient to identify Your assessment of the relative capabilities of micro mills and mini mills, including but not limited to relative product offerings, efficiencies, costs, or output at each type of mill.
>
> …
>
> 6. Documents sufficient to show, on a monthly basis, Your total sales, shipments, prices, freight costs, and margins for rebar by customer location and mill in the United States from January 1, 2017 to the

2

present.

7. Documents sufficient to show, on a monthly basis, Your total production by product (e.g., rebar, merchant bar) for each mill operated by Vinton in the United States from January 1, 2017 to the present.

8. Documents sufficient to show the process by which You set prices for rebar, including the various factors that You take into account as impacting or affecting rebar prices, from January 1, 2017 to the present.

9. For the period of January 1, 2017 to the present, documents sufficient to show, on a monthly basis for each mill operated by Vinton in the United States, costs by category (e.g., labor, scrap), broken out separately by product (e.g., rebar, merchant bar).

…

13. All communications between You and PSG.

(Dkt. 5-3 at 7-8.)

Pursuant to court order, Vinton, CMC, and PSG met and conferred on February 28, 2023. (Dkt. 19 at 2.) At that time, CMC proposed a compromise: "if Vinton would agree to produce a specific portion of the data sought by the Subpoena's Requests 6 and 7, CMC would no longer pursue production for documents and data responsive to the remaining requests to which Vinton previously objected." (Dkt. 19 at 2.) Specifically, as to Request 6, CMC offered to narrow its request to only data "showing Vinton's shipments of rebar to customers by location," in a manner that "anonymizes customer names or other identifying information and shows customer ship location aggregated as high as the county, CSBA (i.e., Core Based Statistical Area), or state level," with a cut-off date of June 30, 2022. (Dkt. 19 at 2-3.) CMC also expressed a willingness to modify Request 7 to only require Vinton to "provide capacity information for each of its mills as opposed to actual production data from January 1, 2017, through June 30, 2022." (Dkt. 19 at 3.) The parties continued to negotiate, but were unable to resolve the disputes.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *Beaver Ctny. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 Advisory

3

1  Comm.'s Note (1979); Fed. R. Civ. P. 34(a)).  Rule 26(b) permits the discovery of "any
2  nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs
3  of the case."  Fed. R. Civ. P. 26(b)(1).  "Relevance, for the purposes of discovery, is defined
4  broadly and '[r]elevant information need not be admissible at trial if the discovery appears
5  reasonably calculated to lead to the discovery of admissible evidence.'"  *In re Subpoena of DJO,*
6  *LLC*, 295 F.R.D. 494, 497 (S.D. Ca. 2014).

On a motion, the court "must quash or modify a subpoena" that "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Additionally, the court is permitted to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information."  *Id.* at (d)(3)(B)(i).  In determining whether a subpoena poses an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party," which generally requires consideration of "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *In re Subpoena of DJO, LLC*, 295 F.R.D. at 497.

### III.  DISCUSSION

Vinton asserts the subpoena "is facially overbroad because the requests are not particularized and, in aggregate, seek all documents related to Vinton's operations."  (Dkt. 1 at 4.)  It further asserts that compliance would "impose substantial and undue burden" because the subpoena "seeks broad categories of trade secrets and commercially sensitive information from not only Vinton, but also its parent company, Kyoei Steel," and would require "international coordination together with retention of translators and counsel in Japan."  *Id.* at 5.  Additionally, Vinton argues the disclosure of its trade secrets to CMC and PSG, as current and potential competitors, would prejudice its ability to compete in the marketplace.  *Id.* 8-9.

In response to Vinton's motion, CMC "clarified that it does not seek any documents from Vinton's overseas parent and that it would work to address any specific concerns Vinton had with the ESI protocol, particularly if it believes they impose an undue burden."  (Dkt. 6 at 6.)  CMC asserts that "[n]either Vinton's objections nor its motion offer particularized facts demonstrating

4

1    that CMC's subpoena imposes any undue burden" and it crafted the subpoena to avoid imposing
2    undue burden or expense by only seeking "documents sufficient to show" the necessary facts
3    rather than all documents.  *Id.* at 4.  It argues the requests seek documents addressing "three core,
4    disputed issues" in the Litigation:  "1) whether PSG has properly alleged a geographic market
5    given that the alleged market is defined to exclude manufacturers such as Vinton that ship to
6    customers in the area; 2) whether CMC has monopoly power in a relevant market; and 3) whether
7    mini mills are an effective means of competition."  *Id.* at 5.  And it argues the protective order in
8    the Litigation addresses Vinton's expressed concerns because it allows Vinton to limit access to
9    only the parties' outside counsel.  *Id.* at 8.
10        Vinton replies that because CMC subpoenaed documents from five other entities that "are
11   the major players in the relevant market," it "has no need for documents from a single-mill
12   operation such as [it]."  (Dkt. 13 at 5-6.)
13   **A.    Relevance**
14        The Court must first determine whether the requests seek documents relevant to the
15   Litigation.  To succeed on its antitrust claims against CMS, PSG will have to show that "a
16   'relevant market' exists and that the defendant has power within that market."  *Pacific Steel Grp.*
17   *v. Commercial Metals Co.*, No. 20-cv-07683-HSG, 2021 WL 2037961, at *3 (N.D. Cal. May 21,
18   2021).  "The relevant market must include both a geographic market and a product market."  *Id.*
19   (quoting *Hicks v. PGA Tour, Inc.*, 897 F.3 1109, 1120 (9th Cir. 2018)).  "A properly defined
20   geographic market extends to the 'area of effective competition' in which 'buyers can turn for
21   alternative sources of supply.'"  *Id.* (quoting *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th
22   Cir. 2001)).
23        The requests at issue seek documents related to the capabilities of micro mills and mini
24   mills to produce rebar; Vinton's costs, production, and prices for producing and shipping rebar, as
25   well as locations it shipped to; and communications between Vinton and PSG.  Because Vinton
26   operates a mini mill and potentially serves customers within the relevant market, the documents
27   sought are relevant to the Litigation as they may support both PSG's claims and CMC's potential
28   defenses.

### B. Undue Burden

While Vinton argues compliance would subject it to an undue burden such that the entire subpoena should be quashed, the Court disagrees after considering CMC's apparent concessions. Specifically, CMC clarified that it does not seek any documents that would require international coordination and translation to obtain from Vinton 's parent company; it would work with Vinton to address issues regarding concerns with the ESI protocol; and it is not seeking "all documents" but rather only sufficient documents to support its potential defenses. As to Vinton's trade secret argument, the Court must "weigh the risk of disclosure of the trade secret to unauthorized parties with the risk that a protective order will impede prosecution or defense of the claims." *RG Abrams Ins. V. L. Offices of C.R. Abrams*, 342 F.R.D. 461, 500 (C.D. Ca. 2022) (internal citations omitted). To the extent the requests seek trade secrets, the Court sees no reason that the operative protective order in the Litigation—which allows Vinton to designate information as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY"—is insufficient to protect Vinton's interests without hindering CMC's defense.

However, the Court does find that modification of the subpoena is warranted, again based on concessions CMC offered to make when the parties met and conferred. Request 6 shall be modified to request documents showing Vinton's total monthly sales, shipments of rebar by location (using anonymous customer names and aggregating location by state), and freight costs from January 1, 2017, through June 30, 2022. Request 7 shall be modified to request documents showing Vinton's production capacity for each of its mills from January 1, 2017, through June 30, 2022.

//
//
//
//
//
//
//

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Vinton's motion to quash and GRANTS CMC's motion to compel. Within fourteen days of the entry of this Order, Vinton shall serve on CMC its substantive responses to Requests 4, 6 (as modified herein), 7 (as modified herein), 8, 9, and 13.

IT IS SO ORDERED.

Dated: April 11, 2023

_____
KANDIS A. WESTMORE
United States Magistrate Judge